■ In the Matter of the Account of ROBERTA L. KOEPPEL et al., as Executors of ROBERT A. KOEPPEL, Deceased. WILLIAM W. KOEPPEL, Appellant; ROBERTA L. KOEPPEL et al., Respondents. RICHENTHAL, ABRAMS & MOSS et al., Nonparty Respondents. (And Other Actions.) [944 NYS2d 48]—

Order, Surrogate's Court, New York County (Kristin Booth Glen, S.), entered January 19, 2011, which, to the extent appealed from as limited by the briefs, granted, in part, a motion by attorneys Richenthal, Abrams & Moss and the Law Offices of Craig Avedisian, P.C. (collectively, the firms) for partial summary judgment on their charging liens, and denied, in part, client William W. Koeppel's motion for partial summary judgment dismissing such of the firms' claims as were predicated upon the parties' retainer agreement, unanimously affirmed, with costs.

The firms, in seeking enforcement of their charging liens, relied upon the parties' 2006 retainer agreement (2006 retainer) and an unsigned, undated memorandum as supplying an inadvertently omitted term in the 2006 retainer (i.e., the specific contingency rates to be applied). The information in the memorandum was buttressed by an affirmation, based on personal knowledge, submitted by William's primary attorney, Craig Avedisian, who attested to the negotiated contingency rates; indeed, William also acknowledged the validity of the claimed negotiated rates. However, William further relied upon a "termination" provision in the undated memorandum, and argued that it provided for automatic termination of the 2006 retainer on a date that preceded a 2008 global settlement (2008 settlement) reached as to all claims by Koeppel family members as to the contested estates and trusts.

Contrary to William's argument, there was no basis for the undated memorandum to be construed as a "rider" to the 2006 retainer, particularly as it is unsigned, undated, and the actual 2006 retainer did not incorporate the memorandum by reference. Moreover, the executed 2006 retainer clearly stated that

written notice of termination was required. To the extent that the undated memorandum's terms conflict on the termination issue, no affidavit was offered, based on personal knowledge, to indicate whether the termination terms in the memorandum were intended to control. William's attempt to import unintended terms into the finalized 2006 retainer to create ambiguity in a document where none otherwise exists is unavailing (*see generally Remekie v 740 Corp.*, 52 AD3d 393 [2008]; *U.S.B.M. Realty Co., Inc. v Studio MacBeth, Inc.*, 46 AD3d 317 [2007]).

Similarly, contrary to William's claims, there was no basis to find that the provisions within the 2006 retainer were ambiguous, inasmuch as they expressly applied in the event of a settlement reached by substantially all of the interested Koeppel family members, as undisputedly occurred here. To the extent William argues that uncertainty exists as to whether the firms were entitled to a "flat fee" and a "contingency fee" under the given provisions of the 2006 retainer, alleging said provisions to be unclear and/or ambiguous, such claim is refuted by a reading of the plain language of the 2006 retainer, in the context of the history of the Koeppel estates and trusts. Initially, the record demonstrates that the 2006 retainer was intensely negotiated over the course of several weeks, and that William had independent counsel, as well as his accountant, who reviewed the terms of the 2006 retainer along with him. Prior to the 2008 settlement, William did not claim a misunderstanding, or unfamiliarity with the terms of the 2006 retainer. The fee terms, as found by the Surrogate, were premised on a cumulative value of the asset settlement achieved in the client's favor, as compared to a specified value previously proposed in an aborted 2004 settlement attempt. The nature of the assets received in the settlement was not a concern set forth in the 2006 retainer, and the record reflects that the Koeppel family members remained open to negotiation with regard to almost any asset so as to increase the cumulative value of their settlement share.

Pursuant to the plain terms of the 2006 retainer, a flat fee would be earned upon the offer of a settlement that equaled, or exceeded the value of William's specified interest in the 2004 proposed settlement. The evidence in this case indicates that such threshold was met, although the extent to which the 2008 settlement value (to William) exceeded the 2004 settlement value is an issue that the Surrogate submitted for a further hearing. Likewise, no ambiguity exists in memorandum language that set forth how the contingency rates were to be applied. The contingency fee agreement provided for explicit percentages to be applied depending on the ultimate increase in

value of William's 2008 settlement share as compared to the earlier proposed 2004 settlement share.

William's argument that his remainder interest in his father's marital trust should not have been factored into the cumulative value of the 2008 settlement achieved on his behalf, inasmuch as he already possessed such remainder interest before the 2008 settlement was entered into, is unavailing. The parties specifically negotiated that the firms' entitlement to a flat fee and performance fee would be determined by taking the gross value of the 2008 settlement achieved in William's favor and subtracting the 2004 settlement value ($43,640,000) to determine whether there was a positive net result as would trigger a right to payment of both a flat fee and a performance fee. The settlement negotiations left uncertain what assets each family member would receive upon a final agreement, and while William had a remainder interest, that interest was only contingent and subject to an exchange in the final settlement.

The record demonstrates that the legal fees earned under the 2006 retainer were fair and reasonable given the complexity of the matter, the firms' legal experience and long association with William, the considerable time expended on the matter and the very favorable result obtained (see Rules of Professional Conduct [22 NYCRR 1200.0] rule 1.5, formerly Code of Professional Responsibility DR 2-106 [22 NYCRR 1200.11]). Moreover, the 2006 retainer was openly negotiated, addressed William's liquidity problems, and was independently reviewed by his outside counsel. Concur—Saxe, J.P., Sweeny, Moskowitz, Freedman and Manzanet-Daniels, JJ.